[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11944
Non-Argument Calendar
_____

D.C. Docket No. 5:15-cv-00041-MTT-CHW

TIMOTHY DENVER GUMM, et al.,

Plaintiffs,

versus

RICK JACOBS, Field Operations Manager, GDCP,
WARDEN BRUCE CHAPMAN, GDCP,
RODNEY MCCLOUD, Superintendent, GDCP,
WILLIAM POWELL, Deputy Warden of Security, GDCP,
JUNE BISHOP, et al.,

Defendants-Appellees,

JEFFREY BOURASSA,

Movant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 5, 2020)

Before WILLIAM PRYOR, JORDAN, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Jeffrey Bourassa, a *pro se* Georgia prisoner awaiting trial on federal charges, appeals the denial of his motion to intervene in a class action brought by Georgia prisoners against state prison officials. After reviewing the briefs and the record, we dismiss for lack of jurisdiction.

**I**

In 2015, Georgia prisoners brought a class action under 42 U.S.C. § 1983 against officials of the Georgia Department of Corrections. The prisoners alleged that the "Tier III" solitary confinement program to which they were assigned violated their constitutional rights. They sought declaratory relief and an injunction requiring the GDC to establish procedures to protect them from prolonged isolation and to improve the conditions of confinement.

The plaintiffs moved to certify a class. Relevant here, they argued that they were adequate class representatives because their interests completely aligned with those of the class members, they had a strong personal interest in the lawsuit, and they were familiar with the substance of their claims. As for class counsel, their attorneys had substantial experience litigating civil rights matters in federal court, including against Georgia prison officials.

2

The parties negotiated a settlement agreement and jointly moved for approval of the agreement and certification of the proposed class. Their agreement addressed the conditions of confinement and the procedures for reviewing assignment to the Tier III program. It also limited the duration of Tier III confinement to 24 months, save for six security exceptions. Two of the exceptions, relevant here, permitted confinement beyond 24 months if "the inmate's crime was so egregious that the person was placed in the Tier III Program immediately upon being placed in GDC custody" or if "the inmate, due to his unique position of influence and authority over others, poses such an exceptional, credible, and articulable risk to the safe operation of the prison system or to the public that no facility other than the Tier III Program facility is sufficient to contain the risk."

The district court granted preliminary class certification and approval of the settlement subject to objections and a fairness hearing. It ordered that notice of the settlement "be hand-delivered, along with a copy of the Settlement Agreement, to each inmate currently assigned to the Tier III Program."

Mr. Bourassa, a Georgia prisoner, had been assigned to both Tier II and Tier III confinement. He first objected to the settlement based on lack of notice, claiming that he did not receive the agreement because he had been taken into federal custody when the agreement was hand-delivered to other inmates. He argued that, because he had been assigned to Tier III, he would return there after his federal trial and was

3

therefore a class member with the right to notice and an opportunity to object. Mr. Bourassa eventually received the settlement agreement and provided substantive objections to provisions of the agreement.

Mr. Bourassa moved to intervene in the class action, repeating some of his objections to the settlement. He also argued that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915, did not bar his intervention and that he was entitled to intervention as a matter of right. He asserted that his rights were not adequately represented by the named plaintiffs for two reasons—first, because his litigation strategy would have differed from theirs and, second, because they had acceded to the two aforementioned exceptions to the 24-month limit for confinement. Mr. Bourassa requested permissive intervention in the alternative.

After it granted final approval of the class settlement and certified the class, the district court denied Mr. Bourassa's motion to intervene. The district court began by pointing out that Mr. Bourassa failed to cite any statute that would give him an unconditional right to intervene under Rule 24(a)(1). Regarding Rule 24(a)(2), the court found that Mr. Bourassa's motion was timely, and it assumed that he met two of the other three requirements. The court concluded, nonetheless, that Mr. Bourassa failed to demonstrate that the class plaintiffs did not adequately represent his interests. The district court therefore denied his intervention as of right and denied permissive intervention under Rule 24(b) in the alternative.

4

Mr. Bourassa appealed.  He also moved in the district court for leave to appeal *in forma pauperis*, but the court denied that motion.

## II

We review only the district court's denial of Mr. Bourassa's motion to intervene as a matter of right because Mr. Bourassa has abandoned his argument regarding permissive intervention by failing to raise it in his appellate briefing.  *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) ("While we read briefs filed by *pro se* litigants liberally, issues not briefed on appeal by a *pro se* litigant are deemed abandoned.") (internal citations omitted).  Because we conclude that the district court did not err in denying Mr. Bourassa the right to intervene, moreover, we need not address his argument regarding the Prison Litigation Reform Act.[1]

We review a district court's denial of intervention as of right *de novo* but the underlying findings of fact for clear error.  *See Fox*, 519 F.3d at 1301.  Although orders denying intervention are not final orders, under our "anomalous rule" we have provisional jurisdiction to determine whether the district court erred in denying intervention as a matter of right under Rule 24(a).  *See id.* at 1301.  If the district court did not err, our "jurisdiction evaporates because the proper denial of leave to intervene is not a final decision."  *Id.* (quotation marks omitted).

---

[1] If we were to review the denial of permissive intervention, we would do so for clear abuse of discretion, *see Fox v. Tyson Foods, Inc.*, 519 F.3d 1298, 1301 (11th Cir. 2008), and we see no such abuse of discretion in the district court's well-reasoned order.

5

A movant has a right to intervene under Rule 24(a)(2) if "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit." *Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1512 (11th Cir. 1996). We limit our analysis to the fourth requirement, as did the district court and the appellees.

In concluding that Mr. Bourassa's interests were adequately represented, the district court found that the class representatives had the "same ultimate objective" as Mr. Bourassa regarding the conditions of confinement in Tier III and had at least as strong an interest in limiting long-term confinement. Those finding were not clearly erroneous and have ample support in the record.

One of the named plaintiffs was in the Tier III unit for seven years, while another was assigned in July of 2009 and has remained there ever since. Clearly those plaintiffs had a strong interest in limiting their duration of confinement, and in fact they negotiated favorable settlement terms that accomplished just that. Because Mr. Bourassa had the same ultimate objectives as the plaintiffs, there was a presumption that the plaintiffs would adequately represent his interests. *See Int'l Tank Terminals, Ltd. v. M/V Acadia Forest*, 579 F.2d 964, 967 (5th Cir. 1978). Mr. Bourassa cannot overcome that presumption.

6

The district court—most familiar with the course of proceedings—found that there was no indication that class counsel could have negotiated more vigorously or obtained better results at trial.  Based on its own independent review, the district court approved the settlement, finding it to be fair, adequate, and reasonable for the entire class.  *Cf.* 7B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1799 (3d ed. April 2020 Update) (stating that in the class action context, "[i]f the court determines that the absent class members are adequately represented, intervention as of right under Rule 24(a) should be unavailable").

Mr. Bourassa presents several other arguments.  Some were not raised below, however, and we generally do not consider issues not raised in the district court.  *See, e.g., Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).  Some arguments—such as those regarding Tier II custody—are not relevant to the class action and therefore not germane to his motion to intervene.  Some appear to be direct objections to the settlement agreement and are therefore beyond the scope of Mr. Bourassa's appeal.  His two remaining arguments are unpersuasive.

First, Mr. Bourassa fails to support his contention that his interests were not adequately represented because the plaintiffs acceded to the two security exceptions to the 24-month confinement limitation.  His own allegations undermine this argument.  Based on his motion to intervene, Mr. Bourassa was not placed in Tier III confinement until *after* he was first taken into Georgia custody.  The first

7

exception therefore would not apply to him.  He also failed to provide evidence as to why the GDC would find that he fits under the second exception—i.e., that he has a "unique position of influence and authority over others" or poses a serious threat—such that extended Tier III confinement would be required if he were to return to Georgia custody.

Second, Mr. Bourassa argues that he could have obtained better results than class counsel and that he would have pursued a different litigation strategy.  But he provided no evidence or persuasive arguments for the former assertion and, as courts and treatises have explained, "[d]ivergence of tactics and litigation strategy is not tantamount to divergence over the ultimate objective of the suit."  *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 949 (9th Cir. 2009).  *See also Jones v. Prince George's Cty., Maryland*, 348 F.3d 1014, 1020 (D.C. Cir. 2003) ("A mere difference of opinion concerning the tactics with which litigation should be handled does not make inadequate the representation of those whose interests are identical with that of an existing party or who are formally represented in the lawsuit.") (quoting 7C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1909, at 344 (2d ed. 1986)).[2]

---

[2] Mr. Bourassa also contends that the district court erred in denying him leave to appeal *in forma pauperis*.  An order denying leave to appeal *in forma pauperis* is not a final appealable order and the proper avenue for review is by motion on appeal.  *See* Fed. R. App. P. 24(a)(5) & advisory committee notes (1967) (stating that the rule concerning *in forma pauperis* appeal "establishes a subsequent motion in the court of appeals, rather than an appeal . . . as the proper procedure for calling in question the correctness of the action of the district court").

8

## III

For the foregoing reasons, we conclude that the district court correctly denied Mr. Bourassa's motion to intervene and we dismiss the appeal for lack of jurisdiction.

**DISMISSED.**